European Community v. RJR Nabisco

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

    At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of April, two thousand fifteen.

PRESENT: ROBERT A. KATZMANN,
                        Chief Judge,
        DENNIS JACOBS,
        JOSÉ A. CABRANES,
        ROSEMARY S. POOLER,
        REENA RAGGI,
        RICHARD C. WESLEY,
        PETER W. HALL,
        DEBRA ANN LIVINGSTON,
        GERARD E. LYNCH,
        DENNY CHIN,
        RAYMOND J. LOHIER, JR.,
        SUSAN L. CARNEY,
        CHRISTOPHER F. DRONEY,
                        Circuit Judges.

- - - - - - - - - - - - - - - - - - - - - - - -X

EUROPEAN COMMUNITY, acting on its own behalf and on behalf of the Member States it has power to represent, KINGDOM OF BELGIUM, REPUBLIC OF FINLAND, FRENCH REPUBLIC, HELLENIC REPUBLIC, FEDERAL REPUBLIC OF GERMANY, ITALIAN REPUBLIC, GRAND DUCHY OF LUXEMBOURG, KINGDOM OF THE NETHERLANDS, PORTUGUESE REPUBLIC, KINGDOM OF SPAIN, individually, KINGDOM OF DENMARK, CZECH REPUBLIC, REPUBLIC OF LITHUANIA, REPUBLIC OF SLOVENIA, REPUBLIC OF MALTA, REPUBLIC OF HUNGARY, REPUBLIC

OF IRELAND, REPUBLIC OF ESTONIA, REPUBLIC
OF BULGARIA, REPUBLIC OF LATVIA, REPUBLIC
OF POLAND, REPUBLIC OF AUSTRIA, KINGDOM
OF SWEDEN, REPUBLIC OF CYPRUS, SLOVAK
REPUBLIC, ROMANIA,

    <u>Plaintiffs-Appellants</u>,

      - v.-                                 11-2475

RJR NABISCO, INC., R.J. REYNOLDS TOBACCO
COMPANY, R.J. REYNOLDS TOBACCO
INTERNATIONAL, INC., RJR ACQUISITION
CORP., FKA NABISCO GROUP HOLDINGS CORP.,
RJR NABISCO HOLDINGS CORP., R.J. REYNOLDS
TOBACCO HOLDINGS, INC., NABISCO GROUP
HOLDINGS CORP., R.J. REYNOLDS GLOBAL
PRODUCTS, INC., REYNOLDS AMERICAN INC.,
R.J. REYNOLDS TOBACCO COMPANY, a North
Carolina Corporation,

    <u>Defendants-Appellees</u>.

- - - - - - - - - - - - - - - - - - - - - -x

For Plaintiffs-
Appellants:               John J. Halloran, Jr., John J.
                     Halloran, Jr., P.C., White Plains,
                     NY, Kevin A. Malone, Carlos A.
                     Acevedo, Krupnick, Campbell, Malone,
                     Buser Slama, Hancock, Liberman P.A.,
                     Fort Lauderdale, FL.

For Defendants-
Appellees:                Gregory G. Katsas, John M. Gore,
                     Jones Day, Washington, D.C., Mark R.
                     Seiden, Jones Day, New York, NY.

**ORDER**

Following disposition of this appeal, an active judge of the Court requested a poll on whether to rehear the case en banc. A poll having been conducted and there being no majority favoring en banc review, rehearing en banc is hereby **DENIED**.

Peter W. Hall, Circuit Judge, concurs by opinion in the denial of rehearing en banc.

Dennis Jacobs, Circuit Judge, joined by José A. Cabranes, Reena Raggi, Debra Ann Livingston, and Gerard E. Lynch, dissents by opinion from the denial of rehearing en banc.

José A. Cabranes, Circuit Judge, joined by Dennis Jacobs, Reena Raggi, and Debra Ann Livingston, Circuit Judges, dissents by opinion from the denial of rehearing en banc.

Reena Raggi, Circuit Judge, joined by Dennis Jacobs, José A. Cabranes, and Debra Ann Livingston, Circuit Judges, dissents by opinion from the denial of rehearing en banc.

Gerard E. Lynch, Circuit Judge, dissents by opinion from the denial of rehearing en banc.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

HALL, *Circuit Judge*:

This petition for rehearing in banc challenges the conclusion of the panel, consisting of senior judges Leval and Sack, and me, that the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, applies to foreign conduct when liability is based on "racketeering acts" consisting of violations of predicate statutes which Congress expressly made applicable to foreign conduct. *See European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014). As Judges Leval and Sack, being senior judges, have no vote on whether to grant rehearing in banc, I write independently in support of denial of the petition.

In considering the petition for panel rehearing, our panel reexamined our initial view, as well as its compatibility with *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247 (2010), and with our court's ruling in *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010), and reaffirmed the soundness of our conclusion.

RICO applies when the evidence shows a pattern of "racketeering activity." 18 U.S.C. §§ 1962, 1964. "Racketeering activity" is defined as "any act . . . indictable under" specified criminal statutes. *Id.* § 1961(1). The criminal statutes specified are colloquially referred to as RICO "predicates." As the panel opinion noted, some of the specified predicate statutes expressly provide that extraterritorial conduct is indictable. *See RJR Nabisco*, 764 F.3d at 136.

Many of the predicates that apply to foreign conduct relate to international terrorism. A few weeks after the terrorist attacks of September 11, 2001, Congress passed the USA PATRIOT Act of 2001 (the "Patriot Act"), an anti-terrorism measure, which, among other provisions, amended RICO by adding to its list of predicates nearly 20 antiterrorism statutes that expressly apply to foreign conduct. Pub. L. No. 107-56, § 813, 115 Stat. 272, 382. The Patriot Act did this

1

by adding those statutes to RICO's definition of "racketeering activity" specified in § 1961(1) as a basis of RICO liability.[1] 18 U.S.C. § 1961(1). The House Report for the Patriot Act states, "[t]he RICO provisions in the bill . . . . enhance the civil and criminal consequences of certain crimes that have been deemed RICO predicates by Congress and provide better investigative and prosecutorial tools to identify and prove crimes." H.R. Rep. No. 107-236, at 70 (2001). Since 2001, Congress has added additional explicitly extraterritorial crimes to RICO, for a total of nearly 30 predicate racketeering acts that expressly apply to foreign conduct, nearly all of them relating to international terrorism directed against United States interests. *See, e.g.*, 18 U.S.C. §§ 2332g (conduct involving anti-aircraft missile systems); 2339D (terrorist military training). Some of RICO's predicate statutes indeed apply *only* to conduct outside the United States. *See, e.g.*, 18 U.S.C. § 2332 (killing, and attempting to kill, "a national of the United States, *while such national is outside the United State*s" (emphasis added)); 18 U.S.C. § 2423(c) (engaging in illicit sexual conduct *in foreign places* by a U.S. citizen or permanent resident).

The panel opinion concluded that "[b]y incorporating these statutes into RICO as predicate racketeering acts, Congress has clearly communicated its intention that RICO apply to extraterritorial conduct to the extent that extraterritorial violations of those statutes serve as the basis for RICO liability." *RJR Nabisco*, 764 F.3d at 137. That conclusion was sound. The RICO statute explicitly states that acts "indictable under" the specified statutes constitute "racketeering activity," to which RICO liability attaches, and many of these predicate statutes expressly provide that foreign conduct is indictable.

This interpretation of RICO is wholly consistent with *Morrison*. In *Morrison*, the

---

[1] Prior to the Patriot Act, only a few RICO provisions specified extraterritorial application.

Supreme Court explained that there is a presumption against construing United States statutes as applying extraterritorially but that the presumption is overcome when the statute clearly manifests a congressional intent that it apply extraterritorially. *See Morrison*, 561 U.S. at 265. Courts are not to justify extraterritorial application by speculating that Congress would have wanted that had it focused on the question. On the other hand, when Congress, acting within its powers, has explicitly provided for extraterritorial application of a statute, as it has done by incorporating statutes that apply extraterritorially into RICO as predicates, the statute must be interpreted as Congress has directed. The purpose of *Morrsion* was to bar courts from attributing to Congress an intent that its statutes apply extraterritorially in the absence of a clear expression thereof; it was not to prevent courts from giving effect to Congress's clearly manifested intentions that certain statutes apply extraterritorially.

Finally, the panel's holding on this point is consistent with *Norex.* The panel disagreed with the district court's interpretation of *Norex* as concluding that RICO could never have extraterritorial application. To the question of whether RICO, in any of its applications, has extraterritorial reach, the *Norex* opinion devotes two sentences, each of which could have two meanings. The first sentence, derived from our court's prior opinion in *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046, 1051 (2d Cir. 1996), states that "the RICO statute is silent as to any extraterritorial application." The second states that *Morrison* "forecloses [the *Norex* plaintiff's] argument that because a number of RICO's predicates possess an extraterritorial reach, RICO itself possesses an extraterritorial reach." *Norex*, 631 F.3d at 33.[2]

---

[2]     Judge Raggi twice quotes *Norex* as saying, because "'RICO is silent as to any extraterritorial application,' . . . therefore, 'it has none.'" *See* Raggi Dissent at 1; *see also id.* at 8. This will mislead the reader, although doubtless unintentionally. It is true that the words "it

3

The first of these sentences, noting RICO's silence on extraterritorial application, could mean that the RICO statute does not suggest that it might broadly apply *in all of its provisions* to extraterritorial conduct. Alternatively, the words of the sentence could also mean that RICO is "silent" as to whether *any* of its component provisions can ever apply to extraterritorial conduct. The first interpretation seems far more probable. First, if the statement carries the former meaning, it is indisputably correct. The RICO statute is indeed silent as to general extraterritorial application. There are no words in the statute which suggest, or even discuss, the possibility that foreign conduct might be considered violative of RICO, without regard to whether the particular predicate invoked applies to foreign conduct. On the other hand, if given the second meaning, the statement would be either flatly incorrect, or at least misleading. As explained above, RICO incorporates by reference the terms of other statutes. The Act explicitly states that racketeering activity, which serves as a basis of RICO liability, includes any act "indictable under" the incorporated predicate statutes, a number of which expressly provide that foreign conduct is indictable. Whatever ultimate conclusion one might draw, RICO certainly cannot be fairly described as "silent" on the question whether any predicate acts of racketeering can consist of foreign conduct. Furthermore, the sentence about silence, if construed to mean that RICO contains no indication whether any of its predicate acts of racketeering can include foreign conduct, would seem contradicted by the second sentence on the issue, which recognizes that "a number of RICO's predicates possess an extraterritorial reach." *Norex*, 631 F.3d at 33.

has none" appear in the *Norex* decision. But in uttering those words, *Norex* was not speaking about the RICO statute. It was simply quoting *Morrison's* framework for deciding whether a statute has extraterritorial application. *Morrison* stated (and *Norex* quoted), "[W]hen a statute gives no clear indication of an extraterritorial application, *it has none*." *Norex*, 631 F.3d at 32 (emphasis added). *Norex* never said that RICO has no extraterritorial application.

4

The second sentence, if taken out of context, could have either of two meanings:

(1) In view of *Morrison*, we reject the plaintiff's argument that, by providing for extraterritorial application of *some* of RICO's predicates, Congress manifested a clear intention that RICO have extraterritorial application in *all* of its provisions.

(2) Notwithstanding Congress's express provision that "racketeering activity" include some clearly specified foreign conduct, *Morrison* requires that racketeering activity be construed as excluding all foreign conduct.

The first interpretation is clear, logical, and entirely consistent with *Morrison*. Under

*Morrison*, the presumption against extraterritorial applicability requires that statutes be

understood not to apply extraterritorially absent a clear provision for extraterritorial application.[3]

The fact that Congress made clear provision in the terms of RICO that *some* of its

predicates apply extraterritorially does not manifest a clear congressional intent that its other

provisions also apply extraterritorially. With respect to extraterritorial application of these other

provisions, RICO would flunk the *Morrison* test. This is so clear a consequence of *Morrison*'s

rule that one short sentence is entirely sufficient to state the point. It requires no further

explanation.

On the other hand, if the *Norex* panel had in mind version (2) when it said that "*Morrison*

. . . forecloses [the plaintiff's] argument," one would wonder why the panel came to that

---

[3] Judge Raggi suggests that *Morrison*'s discussion of Section 30(b) of the Exchange Act supports her view that RICO can never have extraterritorial application. *See* Raggi Dissent at 8–10. In fact, this portion of *Morrison*'s discussion supports the panel's interpretation of RICO. In *Morrison*, the parties argued that, because one small provision of the Exchange Act could potentially apply extraterritorially, the entire Act should be read as applying extraterritorially. *See Morrison*, 561 U.S. at 263–65. The *Morrison* court rejected this argument, holding that "when a statute provides for *some* extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 561 U.S. at 265 (emphasis added). In *RJR Nabisco*, our panel followed precisely this line of reasoning, holding that where Congress has prescribed extraterritorial application for certain of RICO's predicates, it applies extraterritorially "only to [that] extent." 764 F.3d at 136.

5

conclusion. *Id.* Where Congress expressly provided that acts "indictable" under statutes listed in RICO are "racketeering acts," which justify RICO liability, and Congress included in that list statutes that expressly provide for extraterritorial application (indeed some that apply *only* to foreign conduct), Congress did exactly what *Morrison* requires for extraterritorial application. It manifested a clear intention that RICO apply extraterritorially—to that limited extent. If the *Norex* opinion meant that, notwithstanding this clear manifestation of congressional intent, *Morrison* requires that RICO be interpreted as never applying to foreign conduct, one would wonder why the *Norex* panel reached that conclusion and how it could be justified. The assertion would cry out for further explanation, if indeed any adequate explanation could be found. Notwithstanding the facial ambiguity of the sentence, the brevity of the *Norex* panel's treatment of the subject strongly suggests that it meant to convey the simple, noncontroversial proposition expressed in version (1) above, and not the puzzling proposition expressed in version (2).

In short, recognizing the potential ambiguity in *Norex*'s brief discussion of this point, by far the sounder interpretation of that ruling is that RICO's clear manifestation of intent that *some* of its provisions apply to foreign conduct permits extraterritorial application of RICO in those situations, but does not justify interpreting every provision of RICO as being extraterritorial. The panel's ruling in this case was in full agreement with that proposition.

Some colleagues are troubled by the prospect of applying RICO to extraterritorial conduct, which they deem unwise. Whether this is wise or unwise is not the court's business when Congress has legislated clearly on the issue. Congress provided in the RICO statute that acts "indictable under" a list of predicate acts are racketeering acts. That ends our inquiry.

6

I therefore concur with the court's decision to deny rehearing in banc.

DENNIS JACOBS, Circuit Judge, joined by JOSÉ A. CABRANES, REENA RAGGI, DEBRA ANN LIVINGSTON, and GERARD E. LYNCH, Circuit Judges, dissenting from the denial of rehearing in banc:

I respectfully dissent from denial of rehearing in banc. The panel opinion in this appeal is in taut tension with our earlier opinion in Norex Petroleum Ltd. v. Access Industries, Inc., 631 F.3d 29 (2d Cir. 2010) (per curiam). The resulting instability will likely require in banc review to reconcile these precedents, or to jettison one of them.

Both cases address the extraterritorial application of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. They reach dissonant conclusions as to: (1) whether RICO may apply extraterritorially, compare Norex, 631 F.3d at 31, with European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 136 (2d Cir. 2014); (2) whether Supreme Court precedent "forecloses [the] argument that because a number of RICO's predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach," Norex, 631 F.3d at 33; compare id., with RJR Nabisco, 764 F.3d at 136; and (3) the very definition of an extraterritorial application of RICO, namely whether extraterritoriality turns on the foreign locus of the *enterprise* or the foreign locus of the *predicate acts*, compare Norex 631 F.3d at 31, 33, with RJR Nabisco, 764 F.3d at 136, 142.

The frequency of RICO litigation in this Circuit all but ensures that district courts will face vexing questions about this. Litigation on the fault lines of <u>Norex</u> and <u>RJR Nabisco</u> is likely to present "a controlling question of law as to which there is substantial ground for difference of opinion" and whose resolution "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Under such conditions, "district courts should not hesitate to certify an interlocutory appeal." <u>Mohawk Indus., Inc. v. Carpenter</u>, 558 U.S. 100, 111 (2009).

**JOSÉ A. CABRANES, Circuit Judge, joined by DENNIS JACOBS, REENA RAGGI, and DEBRA ANN LIVINGSTON, Circuit Judges, dissenting from the order denying rehearing en banc:**

The question presented in this civil case is whether the RICO statute[1] applies extraterritorially.

This is an important question, and it has been answered in a novel and artful way by a panel of our Court. Absent review by the Supreme Court, the panel's interpretation will have a significant and long-term adverse impact on activities abroad that we have heretofore assumed were governed primarily by the laws of the territories where those activities occurred.

After a close and considered vote, the en banc court has decided to forgo the possibility of reviewing the panel's opinion.[2] From that regrettable decision I respectfully dissent.

If this decision remains undisturbed, the prevailing plaintiffs here, the European Community and its member states,[3] will have achieved a pyrrhic victory, and one that the Community's constituents will have cause to regret in the years ahead. Why? Because its citizens, natural and corporate, are among the likely targets of future RICO actions under the panel's interpretation of the statute.

The panel holds that *RICO itself* has an extraterritorial reach if and when one of RICO's *predicate statutes* has an extraterritorial reach. This reasoning conflates the question of whether RICO applies extraterritorially with whether the statute's definition of "racketeering activity" includes predicate offenses that can be charged abroad. If RICO were merely an additional criminal—or, as is often the case, civil—consequence for committing predicate offenses, this view might have some merit. But, as Judge Raggi's compelling dissent makes clear, RICO is not simply designed to pile on

---

[1] 18 U.S.C. §§ 1961–1968.

[2] Note that "the decision not to convene the en banc court does not necessarily mean that a case either lacks significance or was correctly decided. Indeed, the contrary may be true." *United States v. Taylor*, 752 F.3d 254, 256 (2d Cir. 2014) (Cabranes, *J.*, dissenting from the denial of rehearing en banc) (describing the special history of en bancs in the Second Circuit and highlighting the various factors that may explain why a judge would vote in favor or against the convening of an en banc court).

[3] The European Community was "a governmental body created through collaboration among the majority of the nations of Europe." Appellant's Br. at 6. Since this lawsuit was originally filed, the European Community has been incorporated into the European Union. *See European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 148 (2d Cir. 2014).

punishment. Rather, the statute prohibits distinct behavior: conducting, controlling, or funding an *enterprise* through a *pattern* of racketeering.

The panel overlooks the statutory text, going straight to the definition of "racketeering activity," determining that some predicate acts are punishable abroad, and then splitting plaintiffs' RICO claim in two – one "domestic" RICO claim for those predicate acts that are not punishable abroad and that defendants allegedly committed in the United States, and one "extraterritorial" RICO claim for those predicate acts that *are* punishable abroad. This reasoning is flatly inconsistent with years of precedent from this Court, and the Supreme Court, that treats RICO as an offense distinct from its predicate acts. Although it is indisputable that Congress intended for certain RICO predicate statutes to apply to actions or events abroad, there is no clear basis for concluding that Congress intended for RICO itself to go along with them. For this reason, the panel's opinion also may allow an end-run around the revivified presumption against extraterritoriality in *Morrison*[4] and *Kiobel.*[5]

Indeed, there are many important criminal statutes which expressly make extraterritorial activity indictable but say nothing about the availability of RICO in the circumstances they address—perhaps because legislators were focusing more on the prosecutions of crimes, including some involving acts of terrorism, and not on the treble damages and attorney's fees available under civil actions for damages. It is thus a red herring at best to suggest that, by incorporating a number of mostly terrorism-related crimes within RICO,[6] Congress also intended—without any clear expression of affirmative intent—to give global reach to a whole host of non-terrorism-related[7] civil

---

[4] *Morrison v. Nat'l Aus. Bank Ltd.*, 561 U.S. 247 (2010).

[5] *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013).

[6] The panel's opinion, Judge Hall's concurrence in support of the order denying rehearing en banc, and Judge Lynch's dissent from the order denying rehearing en banc are all very keen to locate RICO's extraterritoriality within its terrorism-focused predicates. *See RJR Nabisco*, 764 F.3d at 136 (listing a number of RICO's predicate statutes focused on terrorism offenses); Hall Concurrence at 1 ("Many of the predicates that apply to foreign conduct relate to international terrorism."); Lynch Dissent at 1-2 (posing a hypothetical scenario involving a "revolutionary group based largely in a Middle Eastern country" that "plant[s] a bomb near a federal office building" and "behead[s] an abducted American journalist").

[7] Indeed, RICO incorporates many predicates that are quite removed from the dark world of international terrorism. *See* 18 U.S.C. § 1961(1) (incorporating statutes that outlaw trafficking in counterfeit copyrighted work (18 U.S.C. § 2319), embezzlement from pension and welfare funds (18 U.S.C. § 664), and other activities that have little connection to terrorism).

2

claims.[8] This is a case of Congress giving an inch and the panel taking a mile. The dubiousness of the panel's stretched reasoning—and its direct tension with *Morrison* and *Kiobel*—is only further reinforced by the fact that a plaintiff need not actually prove any of the extraterritorial predicates in order to sustain *a civil claim* for RICO activities alleged to have occurred entirely outside the United States.[9]

To summarize: After more than four decades of experience with this complicated statute, a panel of our Court has discovered and announced a new, and potentially far-reaching, judicial interpretation of that statute—one that finds little support in the history of the statute, its implementation, or the precedents of the Supreme Court; that will encourage a new litigation industry exposing business activities abroad to civil claims of "racketeering";[10] and that will invite our courts to adjudicate civil RICO claims grounded on extraterritorial activities anywhere in the world.

---

[8] For example, plaintiffs in this Circuit, and others, have sought to use civil RICO claims to challenge supposedly unlawful business practices conducted in foreign countries by alleging, as a predicate act, that one aspect of the scheme involved laundering money through the United States in violation of 18 U.S.C. § 1951. *See, e.g., Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 168 (D.D.C. 2013) (dismissing RICO claim that arose out of "extortion *in Kazakhstan by a Kazakh actor* of Plaintiffs' *Kazakhstan-based* assets"); *Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517 (S.D.N.Y. 2013) (dismissing RICO claim that related to alleged mismanagement in Iraq of the United Nations Oil-for-Food program); *Cedeno v. Intech Grp., Inc.*, 733 F. Supp. 2d 471 (S.D.N.Y. 2010) (dismissing RICO claim that alleged, *inter alia*, that Venezuelan officials and entities damaged a company incorporated in the British Virgin Islands). The panel in *RJR Nabisco*, which identifies money laundering as a predicate act that extends RICO extraterritorially, welcomes such claims into federal court. *See* 764 F.3d at 139–40.

[9] It is also worth noting that the United States, in its *amicus* brief, does not adopt the predicate-centric view of the panel. Needless to say, they also do not invoke the panel's view that RICO's criminal predicates extend the extraterritorial jurisdiction of the statute for non-terrorism-related civil claims. *See* Brief of the United States 9–20.

[10] *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 529-30 (1985) (Powell, *J.*, dissenting) (lamenting the expansion of RICO to include civil racketeering charges "brought—in the unfettered discretion of private litigants—in federal court against legitimate businesses seeking treble damages in ordinary fraud and contract cases").

REENA RAGGI, Circuit Judge, joined by DENNIS JACOBS, JOSÉ A. CABRANES, and DEBRA ANN LIVINGSTON, Circuit Judges, dissenting from the denial of rehearing en banc:

Since Morrison v. National Australia Bank Ltd., 561 U.S. 247 (2010) ("Morrison"), courts in this circuit and around the nation uniformly have held that the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., does not apply extraterritorially. These courts have sometimes differed in how they determined whether a particular RICO application was domestic or extraterritorial, but their underlying assumption has been consistent: "RICO is silent as to any extraterritorial application" and, therefore, "it has none." Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 33 (2d Cir. 2010) ("Norex") (internal quotation marks omitted).[1]

---

[1] See United States v. Chao Fan Xu, 706 F.3d 965, 974–75 (9th Cir. 2013) (recognizing presumption that RICO does not apply extraterritorially); Hourani v. Mirtchev, 943 F. Supp. 2d 159 (D.D.C. 2013); In re LIBOR-Based Fin. Instruments Antitrust Litig., 935 F. Supp. 2d 666 (S.D.N.Y. 2013); Adhikari v. Daoud & Partners, No. 09 Civ. 1237, 2013 WL 4511354 (S.D. Tex. Aug. 23, 2013); Petroleos Mexicanos v. SK Eng'g & Const. Co., No. 12 Civ. 9070 (LLS), 2013 WL 3936191 (S.D.N.Y. July 30, 2013); Republic of Iraq v. ABB AG, 920 F. Supp. 2d 517 (S.D.N.Y. 2013); Tymoshenko v. Firtash, No. 11 Civ. 2794 (KMW), 2013 WL 1234821 (S.D.N.Y. Mar. 26, 2013); Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc., 871 F. Supp. 2d 933 (N.D. Cal. 2012); Aluminum Bahrain B.S.C. v. Alcoa Inc., No. 8-299, 2012 WL 2093997 (W.D. Pa. June 11, 2012); Chevron Corp. v. Donziger, 871 F. Supp. 2d 229 (S.D.N.Y. 2012); Sorota v. Sosa, 842 F. Supp. 2d 1345 (S.D. Fla. 2012); In re Toyota Motor Corp., 785 F. Supp. 2d 883 (C.D. Cal. 2011); United

1

In this civil case, a panel of the court untethers RICO from its mooring on United States shores and concludes, for the first time, that the statute reaches overseas—even to a foreign enterprise conducted through an essentially foreign pattern of racketeering—so long as one predicate act is alleged that references conduct that could be prosecuted under a criminal statute that itself reaches extraterritorially. See European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 136–37 (2d Cir. 2014) ("RJR Nabisco").[2] That same panel concludes that whether a RICO claim is domestic or extraterritorial depends not on the locus of the enterprise or

States v. Philip Morris USA, Inc., 783 F. Supp. 2d 23 (D.D.C. 2011); Cedeno v. Intech Grp., Inc., 733 F. Supp. 2d 471 (S.D.N.Y. 2010).

[2] As summarized by the RJR Nabisco panel, the racketeering scheme here at issue involved a multi-step process beginning with the smuggling of narcotics into Europe by Colombian and Russian criminal organizations, which "laundered" their euro proceeds through money brokers. Those brokers then sold the euros at a discount to cigarette importers who used the money to purchase RJR's cigarettes from wholesalers. The complaint alleges that RJR directed and controlled this money-laundering scheme by, inter alia, concealing the identity of cigarette purchasers, shipping cigarettes through Panama to shield the transactions from scrutiny, and bribing Colombian border guards in order to allow its employees to enter the country illegally to receive payments for cigarettes and then to travel to Venezuela, from where funds were wired to RJR Nabisco accounts in the United States. See RJR Nabisco, 764 F.3d at 135. In addition to extraterritorially proscribed money laundering, see 18 U.S.C. § 1956(f), the complaint charges RJR Nabisco with the predicate extraterritorial crime of providing material support for terrorism insofar as some cigarettes acquired in the described scheme were sold in Iraq to or for the benefit of various terrorist groups. See Second Am. Compl. ¶¶ 75–83; 18 U.S.C. § 2339B(d)(2).

the pattern of racketeering (or on some relationship between the two), but instead on the location of particular predicate acts. See id. at 140–41. In so holding, the panel rejects the district court's determination that RICO's focus is the enterprise, that the locus of the enterprise determines whether RICO is being applied domestically or extraterritorially, and that RICO has no extraterritorial application to foreign enterprises. See European Cmty. v. RJR Nabisco, Inc., No. 02 Civ. 5771 (NGG), 2011 WL 843957, at *4–7 (E.D.N.Y. Mar. 8, 2011).

RJR Nabisco has moved for this court to rehear the case en banc. I vote to grant that review because, like a number of my colleagues, I think the panel's treatment of RICO's extraterritorial application conflicts with controlling precedent, specifically, (1) the Supreme Court's holding in Morrison, which mandates a presumption against the extraterritorial application of United States statutes unless Congress clearly expresses an affirmative intent to have a statute reach abroad; and (2) our holding in Norex (relying on Morrison) that RICO does not apply extraterritorially even though some of its predicate acts are crimes that could be prosecuted extraterritorially.

My concern with the panel's reliance on individual predicate acts to support RICO's extraterritorial reach extends also to its reliance on predicate acts

3

to determine when RICO is being applied domestically and extraterritorially. Morrison used the "focus" of a statute to determine its application. 561 U.S. at 266. Precedent emphasizes that RICO's "focus" is not the alleged predicate acts, but the relationship between a pattern of racketeering (demonstrated by predicate acts) and an identified enterprise. See, e.g., United States v. Basciano, 599 F.3d 184, 205–06 (2d Cir. 2010); see also United States v. Chao Fan Xu, 706 F.3d 965, 975 (9th Cir. 2013) (collecting cases identifying either "enterprise" or "pattern of racketeering" as RICO's focus). Nor can the RJR Nabisco panel suggest otherwise by characterizing RICO as an aggravating statute that simply adds new consequences to the predicate offenses. See RJR Nabisco, 764 F.3d at 135. That premise, from which the rest of the panel's analysis flows, is also at odds with precedent. Successive prosecutions for greater and lesser included offenses implicate double jeopardy. See Brown v. Ohio, 432 U.S. 161, 167–69 (1977). But prosecutions for both RICO and predicate acts of racketeering do not. See United States v. Basciano, 599 F.3d at 205–06.

In light of these concerns, this court needs to give further consideration to two issues: (1) whether RICO applies extraterritorially, and (2) the criteria for determining whether a RICO claim is domestic or extraterritorial. Insofar as a

4

majority of the active members of the court decline to convene en banc for this purpose, I respectfully dissent.

1. The Extraterritoriality Holdings in *Morrison* and *Norex*

To explain how the panel decision conflicts with controlling extraterritoriality precedent—both generally, as stated by the Supreme Court in Morrison, and specifically, as applied to RICO by this court in Norex—it is necessary briefly to discuss that precedent.

In Morrison, the Supreme Court reaffirmed a strong presumption against the extraterritorial application of any United States statute "unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect." 561 U.S. at 255 (internal quotation marks omitted). Morrison found no such clear expression of affirmative intent in Section 10(b) of the Securities Exchange Act of 1934, even though the statute's prohibition of fraud "in connection with the purchase or sale of any security" referenced means or instrumentalities of interstate commerce, which by definition includes commerce with foreign countries. See 15 U.S.C. § 78j(b); id. § 78c(a)(17). In so holding, the Supreme Court specifically rejected the "conduct" and "effects" tests developed by this court to "discern" when Congress would have wanted a

5

statute, otherwise "silent as to . . . extraterritorial application," to reach abroad. See Morrison, 561 U.S. at 255–61 (discussing and rejecting that approach in favor of application of presumption against extraterritoriality "in all cases"). To be sure, Morrison noted that the presumption against extraterritoriality is not a clear statement rule. In short, it does not demand that a statute expressly say "this law applies abroad"; "context can be consulted as well." Id. at 265.[3] But Morrison emphasized that, whatever the purported indicator of extraterritoriality, it must clearly and affirmatively signal Congress's intent for the statute to reach outside this country's borders. See id. Statutory constructions that are merely "possible . . . do not override the presumption against extraterritoriality." Id. at 264.[4]

---

[3] I understand this to mean statutory context, not legislative history, because if Congress's intent remains uncertain after all canons of construction are applied, see generally Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 116 (2d Cir. 2007) (allowing consideration of legislative history only in those circumstances), Congress can hardly be said to have clearly expressed its affirmative intent for a statute to reach extraterritorially.

[4] In fact, Congress is generally explicit in stating its intent for a statute to reach extraterritorially. The money laundering and material support predicates alleged here are proscribed by criminal statutes that explicitly provide for extraterritoriality. As to money laundering, Congress has stated,

> There is extraterritorial jurisdiction over the conduct prohibited by this section if—(1) the conduct is by a United States citizen or, in the

As this court has long recognized, the "RICO statute is silent as to <u>any</u>

extraterritorial application."  <u>North South Fin. Corp. v. Al-Turki</u>, 100 F.3d 1046,

---

> case of a non-United States citizen, the conduct occurs in part in the
> United States; and (2) the transaction or series of related transactions
> involves funds or monetary instruments of a value exceeding
> $10,000.

18 U.S.C. § 1956(f).  As to material support for terrorism, Congress has stated, "There is extraterritorial Federal jurisdiction over an offense under this section." <u>Id.</u> § 2339B(d)(2).

Dozens of other statutes are similarly explicit.  <u>See, e.g.</u>, <u>id.</u> § 1596 (authorizing "extra-territorial jurisdiction" over any human trafficking offense under specified statutory sections if offender is United States national, permanent resident alien, or present in United States); 21 U.S.C. § 959 (stating that prohibition on manufacture or distribution of controlled substances with intent to import "is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States").

The intended extraterritorial application of other statutes is made clear from context: they proscribe only conduct occurring outside this country.  <u>See</u> 18 U.S.C. § 1119 (stating that United States national who "kills or attempts to kill a national of the United States while such national is outside the United States but within the jurisdiction of another country" is subject to criminal penalties as if act had been committed within special maritime and territorial jurisdiction of United States); <u>id.</u> § 1204 (prohibiting retention of "child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights").

In all these circumstances, courts need not engage in "divining what Congress would have wanted if it had thought of the situation before the court," an exercise prohibited by <u>Morrison</u>, 561 U.S. at 261, because Congress has made its extraterritorial intent clear.  The RICO statute, however, does not admit such a conclusion.

7

1051 (2d Cir. 1996) (emphasis added); see also United States v. Chao Fan Xu, 706 F.3d at 974 [9th Cir.] (same). Nevertheless, before Morrison, we had borrowed the conduct and effects tests from our securities and antitrust jurisprudence to allow RICO to reach extraterritorially in some circumstances. See North South Fin. Corp. v. Al-Turki, 100 F.3d at 1051–52. In Norex, however, we acknowledged that Morrison abrogated these tests, mandating both a generally applicable presumption and "a bright-line rule: absent a clear Congressional expression of a statute's extraterritorial application, a statute lacks extraterritorial reach." Norex, 631 F.3d at 32. Applying this rule to RICO, Norex identified no clear expression of congressional intent for extraterritorial application. Indeed, Norex reiterated this court's earlier categorical conclusion that the RICO statute is "'silent as to any extraterritorial application,'" id. (quoting North South Fin. Corp. v. Al-Turki, 100 F.3d at 1051, and declining to treat statement as dictum), and concluded therefrom that "'it has none,'" id. (quoting Morrison, 561 U.S. at 255).[5]

---

[5] Judge Hall, concurring in the denial of rehearing en banc, submits that this description of Norex is misleading because "Norex never said that RICO has no extraterritorial application." Hall, J., Op. Concurring in Denial of Reh'g En Banc, ante at **[3–4 n.2]**. Perhaps not in haec verba. But I respectfully submit that is the conclusion fairly derived from Norex's (1) quotation of Morrison's rule that "'[w]hen a statute gives no clear indication of an extraterritorial application, it

8

Norex then proceeded to hold that Morrison defeated the argument that, just "because a number of RICO's predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach." Id. at 33. In so ruling, Norex cited to Morrison's discussion of Section 30(b) of the Exchange Act, see 15 U.S.C. § 78dd(b) (stating that Act and attending rules and regulations "shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States" unless he does so in violation of regulations promulgated "to prevent . . . evasion" of Act (emphasis added)). The Solicitor General had argued that the exemption would have no function if the Act did not apply in the first instance to securities transactions abroad. See Morrison, 561 U.S. at 264. While acknowledging that the urged construction was "possible," the Supreme Court concluded that such a possibility was insufficient to overcome the presumption against extraterritoriality. See id. (observing that it would be "odd for Congress to indicate the extraterritorial application of the whole Exchange Act by means of a provision imposing a condition precedent to its application abroad" or by limiting "enabling regulations . . . to those

has none," Norex, 631 F.3d at 32 (quoting Morrison, 561 U.S. at 255), and (2) its immediately following reiteration that RICO "'is silent as to any extraterritorial application,'" id. (quoting North South Fin. Corp. v. Al-Turki, 100 F.3d at 1051). Silence is hardly a clear indicator.

preventing 'evasion' of the Act, rather than all those preventing 'violation,'" and concluding that provision was "directed at actions abroad that might conceal a domestic violation or might cause what would otherwise be a domestic violation to escape on a technicality"). Indeed, the Supreme Court ruled that, even when a statute clearly "provides for some extraterritorial application," as in the case of Section 30(a), 15 U.S.C. § 78dd(a), "the presumption against extraterritoriality operates to limit that provision to its terms." Morrison, 561 U.S. at 265.[6]

Norex's specific reference to this last quoted excerpt from Morrison, see 631 F.3d at 32, together with its reiteration of RICO's silence "as to any extraterritorial application," id. (internal quotation marks omitted), signal that the extraterritorial reach of RICO's predicate acts must also be limited "to [their] terms." The terms of the extraterritorial crimes identified as RICO predicates authorize extraterritorial jurisdiction for prosecutions under the referenced proscribing criminal statutes, not for RICO claims alleging such predicates.

---

[6] By its terms, Section 30(a) expressly reaches certain extraterritorial securities transactions, notably, when the issuer has prescribed ties to the United States and the defendant broker or dealer acts in contravention of SEC rules and regulations. Thus, the Supreme Court's treatment of Section 30(a)—limiting the extraterritorial reach of that provision to its terms—should not be conflated with its rejection of the argument that Section 30(b) only made sense if the Exchange Act applied extraterritorially. See Morrison, 561 U.S. at 263–65.

10

To conclude otherwise, the <u>RJR Nabisco</u> panel must read <u>Norex</u> narrowly to hold only that the inclusion of extraterritorial crimes in RICO's list of predicate acts does not clearly signal Congress's intent for RICO to reach "extraterritorially <u>in all of its applications</u>." <u>RJR Nabisco</u>, 764 F.3d at 136 (emphasis in original). The panel pronounces it error to interpret <u>Norex</u> to hold "that RICO can never have extraterritorial reach in <u>any</u> of its applications." <u>Id.</u> (emphasis in original). Thus freed from <u>Norex</u>'s categorical pronouncement that "RICO is silent as to <u>any</u> extraterritorial application," 631 F.3d at 32 (internal quotation marks omitted; emphasis added), the panel concludes that Congress did indeed clearly express its affirmative intent to have RICO reach extraterritorially when a claim—including a civil claim—alleges a pattern of racketeering involving predicate acts proscribed by criminal statutes with extraterritorial reach: "By incorporating these [extraterritorially reaching criminal] statutes into RICO as predicate racketeering acts, Congress has clearly communicated its intention that RICO apply to extraterritorial conduct to the extent that extraterritorial violations of those statutes serve as the basis for RICO liability." <u>RJR Nabisco</u>, 764 F.3d at 137. I am not persuaded by this analysis and, thus, think we need to rehear this case <u>en banc</u>.

First, the <u>Norex</u> decision is not so easily cabined as the <u>RJR Nabisco</u> panel suggests. The complaint in <u>Norex</u> alleged predicate acts of money laundering by United States citizens in amounts exceeding $10,000.[7] Such conduct, like the money laundering at issue in <u>RJR Nabisco</u>, is specifically proscribed extraterritorially. <u>See</u> 18 U.S.C. § 1956(a), (f). Thus, <u>Norex</u>'s rejection of RICO extraterritoriality is not factually distinguishable from this case so as to signal only a general rule not applicable when a plaintiff pleads extraterritorial crimes as RICO predicates.

Second, and in any event, <u>Norex</u> and <u>Morrison</u> do not permit this court to locate a clear expression of <u>RICO's</u> extraterritoriality in pleaded predicates that are themselves extraterritorial crimes. The <u>RJR Nabisco</u> panel justifies that conclusion by observing that certain RICO predicates reference crimes that apply only to extraterritorial conduct. <u>See</u> <u>RJR Nabisco</u>, 764 F.3d at 136 (citing 18 U.S.C. § 2332(a) (prohibiting killing United States national "while such national is outside the United States"), and <u>id.</u> § 2423(c) (prohibiting "engaging in illicit sexual conduct in foreign places")). The panel finds it "hard to imagine why Congress would incorporate these statutes as RICO predicates if RICO could

---

[7] <u>See</u> First Am. Compl. ¶¶ 5–11, 168–70, 182–234, 304–16, J.A. 5579–81, 5556–57, 5559–68, 5579–81, <u>Norex Petroleum Ltd. v. Access Indus., Inc.</u>, No. 07-4553-cv (2d Cir. filed Jan. 9, 2008).

never have extraterritorial application." <u>Id.</u> at 136 (emphasis in original). <u>Morrison</u>, however, effectively declined to recognize such speculative reasoning as a substitute for Congress's clear expression of affirmative intent when it rejected the Solicitor General's argument that an exception to extraterritoriality in the Exchange Act made sense only if the statute applied extraterritorially. <u>See</u> 561 U.S. at 263–65.

In fact, it is not hard to imagine why Congress would have included exclusively extraterritorial crimes in the list of RICO predicates without necessarily intending to extend RICO's own reach extraterritorially. Domestic enterprises can be conducted through patterns of racketeering manifested by foreign as well as domestic acts. For example, a domestic crime syndicate might be conducted through a pattern of racketeering characterized mostly by domestic drug trafficking and money laundering, but with its continuation enabled by the murder of an American rival trafficker while the rival was outside the United States. Congress could well have determined that prosecutors should be allowed to prove such an extraterritorial murder as a racketeering predicate in an essentially domestic pattern of racketeering to demonstrate the intended continuity of the pattern through which the domestic enterprise would be

13

conducted.  See generally H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239–41 (1989) (discussing relatedness and continuity requirements of racketeering pattern).

Similarly, a foreign terrorist organization might engage in a pattern of racketeering consisting primarily of attacks executed in the United States, but financed with funds collected abroad.  See 18 U.S.C. § 2339C(a), (b)(2)(C)(ii).  Congress could have determined that prosecutors seeking to prove the relationship of the essentially domestic pattern to the foreign enterprise, as well as the means for ensuring continuity, should be allowed to prove such criminal extraterritorial financing.[8]

What is not clear from the inclusion of extraterritorially reaching crimes in the list of RICO predicates, however, is Congress's affirmative intent further to extend RICO's reach to foreign enterprises conducted through essentially foreign patterns of racketeering whenever extraterritorial crimes are alleged predicate acts.  The panel submits that such a construction best ensures that "a defendant

---

[8] This second hypothetical assumes that RICO can apply domestically to a foreign enterprise engaged in a pattern of racketeering within the United States.  The law on this point is not settled, as discussed infra at **[21–27]**.  The point warrants our consideration en banc particularly if, as I explain in that same discussion, RICO's domestic or extraterritorial application cannot be determined by reference to individual predicate acts, which are not the statute's focus.  See Morrison, 561 U.S. at 267; United States v. Basciano, 599 F.3d at 205–06.

14

associated with a foreign enterprise" is not permitted "to escape liability for conduct that indisputably violates a RICO predicate," citing as an example the killing of a United States national abroad, conduct made criminal by 18 U.S.C. § 2332. RJR Nabisco, 764 F.3d at 138. The concern is unwarranted. The United States can always prosecute persons for such extraterritorial homicides directly under § 2332. Indeed, it has successfully done so. See, e.g., In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 107 (2d Cir. 2008) (upholding, inter alia, convictions for conspiracy to murder U.S. nationals in violation of § 2332). Moreover, the maximum punishment a defendant would face under § 2332—death—is more, not less, severe than the maximum life sentence he would face if convicted of violating RICO with a § 2332 predicate. Compare 18 U.S.C. § 2232, with id. § 1963(a).

Thus, I respectfully submit that it raises a false alarm to suggest that prosecutors will be thwarted in bringing terrorists to justice unless we recognize RICO to extend extraterritorially to foreign enterprises conducted through foreign patterns of racketeering upon the pleading of any extraterritorial-crime predicate. Rather, it is civil litigants, such as plaintiffs here, who need such a

15

ruling to pursue treble damages in United States courts for foreign racketeering

injuries.[9]

It is particularly difficult, however, to locate a clear expression of

affirmative congressional intent for civil RICO claims to reach extraterritorially in

the inclusion of extraterritorial crimes in RICO's list of predicates. By their

---

[9] In focusing on terrorism hypotheticals, some of my colleagues reference the legislative objectives of the USA PATRIOT Act, which added certain extraterritorial terrorism crimes to RICO's list of predicates. See Hall, J., Op. Concurring in Denial of Reh'g En Banc, ante at **[1–2]**; Lynch, J., Op. Dissenting from Denial of Reh'g En Banc, post at **[1–3]**. For reasons discussed supra at **[6 n.3]**, I do not think Morrison admits consideration of such extra-textual sources in applying the presumption against extraterritoriality.

Furthermore, the cited references indicate only Congress's intent to allow RICO to be used against terrorists. They say nothing about whether that application can be extraterritorial as well as domestic. Indeed, the 9/11 terrorist attacks that prompted the USA PATRIOT Act involved murderous activity within the United States by a domestic cell of terrorists affiliated with a foreign organization.

In any event, RJR Nabisco's predicate-based analysis is not limited to terrorism crimes but reaches the range of extraterritorial crimes listed as RICO predicates. For example, Congress included in that list 18 U.S.C. § 2423(c) (prohibiting commercial sex abroad with persons younger than 18). Does that express its clear intent for RICO to apply extraterritorially to a bordello enterprise in Thailand that secures underage prostitutes for American travelers to that country? The mere possibility that Congress's intent could have reached that far is not enough to override the presumption against extraterritoriality. See Morrison, 561 U.S. at 264. Such caution is all the more warranted when RJR Nabisco's reasoning is applied to a civil RICO claim, for reasons I now discuss in text.

terms, the listed extraterritorial statutes authorize only <u>criminal</u> proceedings, not private actions. Victims of such crimes may be awarded restitution as part of a defendant's sentence or may be allowed to petition the government for shares of forfeited proceeds. <u>See</u> 18 U.S.C. §§ 3663, 3663A; 28 C.F.R. § 9.1 <u>et seq.</u> But the listed extraterritorial statutes—and specifically the money laundering and material support statutes here at issue—themselves afford private persons no civil causes of action. Thus, while the <u>RJR Nabisco</u> panel purports to be recognizing RICO extraterritoriality only to the extent "liability or guilt could attach to extraterritorial conduct under the relevant RICO predicate," <u>RJR Nabisco</u>, 764 F.3d at 136, it in fact moves RICO well beyond the referenced predicate in concluding that a plaintiff who pleads extraterritorial-crime predicates can pursue a civil RICO claim for treble damages, although Congress provided no civil claim in the predicate criminal statute.

Might Congress have approved such an extension of RICO if it had considered such a circumstance? Possibly. But <u>Morrison</u> does not permit courts to apply statutes extraterritorially by "divining what Congress would have wanted if it had thought of the situation before the court." 561 U.S. at 261. No more does it permit the <u>possibility</u> of such congressional intent to overcome the

presumption against extraterritoriality. See id. at 264. Only a clear expression of Congress's affirmative intent that a statute reach extraterritorially can clear that hurdle. See id.; accord Norex, 631 F.3d at 32.

For the reasons stated, I do not think Morrison and Norex permit our court to identify such a clear expression of affirmative intent with respect to the civil RICO claim here at issue. Accordingly, the court should rehear this case en banc to ensure a RICO extraterritoriality determination consistent with these precedents.

2.    The Panel Assigns RICO Predicates a Greater Role than Warranted Under RICO Jurisprudence

The panel's decision to ground RICO's extraterritorial reach in the pleading of certain predicate acts also raises concerns under RICO jurisprudence. It has long been understood that the conduct proscribed by RICO is not the individual predicate acts but, rather, the overall pattern of racketeering activity. See, e.g., United States v. Basciano, 599 F.3d at 205–06 ("[I]t is the pattern of racketeering activity, not the predicates, that is punished by a racketeering conviction."); see generally Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 149 (1987) (observing that "RICO is designed to remedy injury caused by a pattern of racketeering"). More precisely, what RICO prohibits are specified

18

interactions between an identified enterprise and a pattern of racketeering.  See, e.g., United States v. Russotti, 717 F.2d 27, 33 (2d Cir. 1983) ("[I]t is neither the enterprise standing alone nor the pattern of racketeering activity itself which RICO criminalizes.  Rather, the combination of these two elements is the object of punishment under RICO." (emphasis in original)).  Thus, RICO's focus is not on any particular alleged predicate act but on (1) whether such predicate acts as are proved demonstrate the requisite "pattern of racketeering," a matter largely dependent on their relatedness and continuity, see H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 239–41; accord United States v. Daidone, 471 F.3d 371, 374–76 (2d Cir. 2006); and (2) whether that pattern or its proceeds are used to (a) "invest" in, (b) "acquire or maintain . . . any interest in or control of," or (c) "conduct or participate . . . in the conduct of" the alleged enterprise, 18 U.S.C. § 1962(a)–(c).

I respectfully submit that this precedent does not permit RICO to be construed as a statute that simply "adds new criminal and civil consequences to the predicate offenses."  RJR Nabisco, 764 F.3d at 135.  That construction is further refuted by precedent permitting "a defendant to be prosecuted—either simultaneously or at separate times—for both substantive racketeering and the predicate crimes evidencing the pattern of racketeering."  United States v.

19

Basciano, 599 F.3d at 205; cf. Brown v. Ohio, 432 U.S. at 167–69 (holding that double jeopardy bars successive prosecutions for greater and lesser included offenses).

When the role assigned to predicate acts under our RICO jurisprudence is thus understood—not as the object of the statute, but as a means for satisfying its pattern element—it is difficult to identify a clear expression of affirmative intent for civil RICO claims to reach extraterritorially simply from Congress's inclusion of some extraterritorially reaching crimes in the list of possible RICO predicates, even when pleaded as part of the pattern of racketeering.

That argument is defeated, in any event, by the fact that RICO does not require proof of every alleged predicate act or of any particular predicate acts. See United States v. Basciano, 599 F.3d at 206. The law demands only that a RICO plaintiff prove sufficient predicate acts (but not fewer than two) to demonstrate the required pattern of racketeering. See id. In short, a plaintiff alleging a pattern of racketeering evidenced by various RICO predicates—some applying extraterritorially, others applying domestically—might well carry his pattern burden without proving any of the alleged extraterritorial predicates that, under the panel's formulation, are the singular basis for permitting a RICO

claim to reach extraterritorially. It would be curious for Congress to locate a statute's extraterritorial reach in an allegation that need not be proved. If, on the other hand, the panel intended to condition RICO's extraterritorial reach on proof of the alleged extraterritorial-crime predicates—which is not apparent from its opinion—it departs even further from our RICO jurisprudence in requiring not simply proof of a pattern of racketeering, but proof of particular predicates.

Thus, to ensure consistency in the role our jurisprudence assigns to RICO predicate acts, the court should convene en banc to clarify that Congress's identification of some extraterritorial crimes as RICO predicates does not clearly express an affirmative intent for civil RICO claims to reach extraterritorially whenever a plaintiff alleges such crimes as predicate acts.

3.     Determining RICO's Domestic and Extraterritorial Application

This case warrants rehearing for yet a third reason: to clarify how courts should distinguish RICO's domestic and extraterritorial applications. Before RJR Nabisco, the understanding that RICO does not apply extraterritorially required courts to determine whether a particular RICO claim was domestic or extraterritorial. That inquiry remains necessary after RJR Nabisco because the

21

panel, in its effort to distinguish <u>Norex</u>, decides that RICO does not apply extraterritorially when the alleged predicates are not extraterritorial crimes. Without regard to the locus of the enterprise or pattern of racketeering, the panel rules that plaintiffs' claim properly applied RICO <u>extraterritorially</u> to the extent it alleged extraterritorial-crime predicates, at the same time that the claim properly applied RICO <u>domestically</u> to the extent it alleged domestic-crime predicates occurring in the United States. This reliance on individual predicate acts to determine whether a RICO claim is domestic or extraterritorial is at odds with <u>Morrison</u>, <u>Norex</u>, and our RICO jurisprudence.

In <u>Morrison</u>, the Supreme Court concluded that a statute's application is properly determined by its "focus," identified by looking to "the objects of the statute's solicitude." 561 U.S. at 267. Applying this standard to Section 10(b) of the Exchange Act, which prohibits manipulative or deceptive practices in connection with the purchase or sale of securities, <u>Morrison</u> concluded that the statute's focus was not on deceptive conduct, but on the purchase or sale of securities in the United States. <u>See</u> <u>id.</u> ("Section 10(b) does not punish deceptive conduct, but only deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities exchange or any security not so

22

registered.'" (quoting 15 U.S.C. § 78j(b))). Thus, the Exchange Act—which the Court had already held did not apply extraterritorially—could not be applied domestically to challenge foreign purchases or sales of securities based on deceptive conduct in the United States. Domestic application required the purchase or sale of securities in this country. See id.

In Norex, this court cited Morrison to reject a claim that alleged predicate acts of racketeering committed within the United States—mail and wire fraud, money laundering, Hobbs Act and Travel Act violations, and bribery—allowed RICO to apply domestically to an international scheme to take over part of the Russian oil industry. See Norex, 631 F.3d at 31–32.

The RJR Nabisco panel follows neither Morrison nor Norex in determining whether plaintiffs' claims here apply RICO extraterritorially or domestically. With no identification of RICO's "focus," as seemingly required by Morrison, the RJR Nabisco panel looks to predicate acts alone to determine RICO's application, in seeming contravention of Norex. Thus, the panel concludes that plaintiffs' claim permissibly applies RICO extraterritorially for those predicate acts occurring abroad (money laundering and support for terrorism), and permissibly applies RICO domestically for those predicate acts occurring in this country

23

(wire fraud, money fraud, and Travel Act violations). See RJR Nabisco, 764 F.3d at 140–43. This novel approach—which makes individual predicates determinative of RICO's application without regard to the locus of the overall pattern of racketeering or the enterprise—warrants en banc review for several reasons.

First, this court needs to clarify whether Morrison does indeed require courts to look to RICO's "focus" to determine its domestic or extraterritorial application.

Second, the court needs either to identify RICO's "focus" or to resolve the tension between Norex and RJR Nabisco as to the role predicate acts can play in determining RICO's application.

These matters raise significant challenges. Following Morrison, and before RJR Nabisco, courts had generally assumed that RICO's domestic or extraterritorial application should be determined by reference to "the 'focus' of congressional concern" in enacting the statute. Morrison, 561 U.S. at 266; see United States v. Chao Fan Xu, 706 F.3d at 975 (collecting cases). Norex's citation to Morrison in its rejection of plaintiff's domestic application argument in that case is consistent with this assumption. See Norex, 631 F.3d at 32. Thus, the RJR

24

<u>Nabisco</u> panel's failure to identify RICO's focus, or to explain why it did not need to do so to determine the statute's application in this case, creates confusion in this circuit as to <u>Morrison</u>'s controlling effect. This court needs to clarify the matter <u>en banc</u>.

Further, courts that have applied <u>Morrison</u>'s "focus" standard to RICO have found the inquiry "far from clear-cut." <u>United States v. Chao Fan Xu</u>, 706 F.3d at 975. "[T]wo camps" have emerged: one locating RICO's focus in the "enterprise," the other in the "pattern of racketeering." <u>Id.</u> (collecting cases). The district court in this case joined the first camp based on the fact that RICO prohibits only racketeering activity connected in specified ways to an enterprise, which it thought paralleled <u>Morrison</u>'s construction of the Exchange Act to punish only frauds in connection with domestic securities transactions. <u>See</u> <u>European Cmty. v. RJR Nabisco, Inc.</u>, 2011 WL 843957, at *5 (citing <u>Morrison</u>, 561 U.S. at 266–67). By contrast, the Ninth Circuit joined the "pattern" camp, citing Supreme Court decisions stating that "the heart of any RICO complaint is the allegation of a <u>pattern</u> of racketeering," <u>Agency Holding Corp. v. Malley-Duff & Assocs.</u>, 483 U.S. at 154 (emphasis in original), and referencing "RICO's key

25

requirement of a pattern of racketeering," H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S.

at 236.  See United States v. Chao Fan Xu, 706 F.3d at 976–77.[10]

In Norex, this court did not choose between "enterprise" and "pattern"

but, rather, considered both in concluding that a few predicate acts in the United

States were insufficient to allow RICO to be applied domestically to a claim

involving a foreign enterprise and an essentially foreign pattern of racketeering.

See 631 F.3d at 32.  But Norex's treatment of the matter is so brief as to preclude a

---

[10] In United States v. Chao Fan Xu, the Ninth Circuit upheld the domestic application of RICO to defendants' prosecution for scheming "to steal large sums of money from the Bank of China and to get away with it in the United States." 706 F.3d at 979 (observing that immigration and bank fraud parts of pattern were inextricably linked so that without immigration fraud in United States, bank fraud in China would have been "a dangerous failure").  Thus, while defendants' "pattern of racketeering activity may have been conceived and planned overseas," the court concluded that "it was executed and perpetuated in the United States," allowing for domestic prosecution. Id.

Judge Lynch poses certain hypotheticals that might also support RICO's domestic application to foreign enterprises conducted through patterns of racketeering occurring wholly (or at least mainly) in this country. See Lynch, J., Op. Dissenting from Denial of Reh'g En Banc, post at **[3]**.  But if pattern, rather than enterprise (or enterprise in relation to pattern), is RICO's focus and, thus, determinative of its application, this court should say so en banc.  In any event, a conclusion that RICO can apply domestically to a pattern of racketeering occurring mostly in the United States does not ineluctably lead to a conclusion that Congress intended for RICO to apply extraterritorially to a foreign enterprise conducted through an entirely foreign pattern of racketeering evidenced by predicates prohibited by extraterritorially reaching statutes—Judge Lynch's third hypothetical. See id. at **[3]**.  Certainly, that possibility warrants further careful consideration en banc.

confident conclusion on the focus point.  In any event, <u>Norex</u> does not specify whether enterprise and pattern should be viewed independently, conjunctively, or alternatively in determining RICO's application.[11]

Where <u>Norex</u> is not ambiguous, however, is in its rejection of predicate acts as determinative of RICO's application.  This is evident from its affirmance of the dismissal of RICO claims despite allegations that domestic predicate acts were part of the pattern of racketeering.  <u>See</u> 631 F.3d at 31.  It is <u>RJR Nabisco</u> that confuses that point by relying exclusively on predicate acts to determine RICO's application.  That approach is not only at odds with <u>Norex</u> and <u>Morrison</u>, but also with our RICO jurisprudence, which as already discussed holds that the object of racketeering "is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts."  <u>United States v. Pizzonia</u>, 577 F.3d 455, 459 (2d Cir. 2009); <u>accord</u> <u>United States v. Basciano</u>, 599 F.3d at 205–06; <u>see also</u> <u>United States v. Russotti</u>, 717 F.2d at 33.

---

[11]  In its <u>amicus</u> filing, the United States urges that RICO's focus is on both the enterprise and the pattern of racketeering, so that these elements can operate in the alternative to allow RICO to apply domestically if either the enterprise or the overall pattern of racketeering operates in the United States.  <u>See</u> Br. of United States 7–20.  The United States does not argue in favor of the <u>RJR Nabisco</u> panel's use of individual predicate acts to determine RICO's application.

Thus, if <u>Morrison</u> does, indeed, require RICO application to be determined by reference to the statute's focus, and if discrete predicate acts are not RICO's focus, this court needs to clarify <u>en banc</u> how a court properly determines whether a RICO application is domestic or extraterritorial.

Accordingly, I respectfully dissent from the court's decision not to rehear this case <u>en banc</u> to provide needed clarity as to both (1) whether RICO applies extraterritorially, and (2) the criteria for determining whether a RICO claim is domestic or extraterritorial.

GERARD E. LYNCH, Circuit Judge, dissenting from the denial of rehearing *en banc*:

I join in Judge Jacobs's dissent from denial of rehearing *en banc*, because I believe that the tension between the panel's holding in this case, *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014), and our prior decision in *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010), should be resolved. But I do not join the other dissenters in their criticisms of the panel's resolution. Because *en banc* review has been denied, I do not need to come to a definitive conclusion about the circumstances under which RICO reaches conduct occurring outside the United States. Largely for the reasons explained by Judge Hall, however, I am inclined to think that the better outcome would be to adopt the view of the panel in this case and hold that RICO applies to patterns of predicate acts committed abroad where those predicate acts violate federal statutes with express extraterritorial reach.

As Judge Raggi's dissent demonstrates, the very concept of "extraterritorial application" of a complex statute such as RICO is a vexing one. *See* Raggi Dissent at 22-28. Such a question is not easily resolved by sloganeering reference to the presumption against extraterritoriality emphasized in *Morrison v. National Australia Bank, Ltd.*, 561 U.S. 247, 255 (2010). The primary prohibition in RICO, and the one at issue here, criminalizes "conduct[ing] . . . [an] enterprise's affairs . . . through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The two key elements are the "enterprise" and the "pattern of racketeering." Which, or what combination, of these elements is critical in determining whether any given application of RICO is "extraterritorial"?

Consider the following hypothetical. A leader of a revolutionary group based largely in a Middle Eastern country, in an effort to intimidate the United States to stop supporting that country's government, plots and carries out two crimes: planting a bomb near a federal office

building in an American city, resulting in the deaths of several people, and beheading an abducted American journalist in the country where the group primarily operates. The terrorist leader is captured by American forces, and is indicted in the United States for violating RICO. The revolutionary group likely qualifies as an "enterprise" under the definition of that term in 18 U.S.C. § 1961(4). Both terrorist strikes qualify as one or more racketeering acts: the bombing in the United States involves arson and murder, chargeable as felonies under the law of the relevant state, *see* 18 U.S.C. § 1961(1)(A), and the murder of an American abroad is indictable under 18 U.S.C. § 2332(a)(1) – a statute that by its very terms can *only* be violated by acts outside the United States – which is listed as a RICO predicate under 18 U.S.C. §§ 1961(1)(G) and 2332b(g)(5)(B). Together, these acts very likely form a "pattern of racketeering activity," since they are related to each other in goals, methods, and personnel, and they exhibit continuity because the enterprise has a continuous existence that threatens to involve further such acts. *See* 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240-42 (1989).

Is this an "extraterritorial" application of RICO? Not an easy question. The enterprise in question is primarily foreign, in its membership, goals, and usual sphere of operation. The pattern of racketeering activity took place partially in the United States and partially abroad, though the foreign portion of the pattern involved conduct that Congress has expressly chosen to reach via the extraterritorial application of American law. Whether to characterize the hypothetical indictment as an "extraterritorial application of RICO" is an interesting conceptual question.

But the actual legal question posed by the hypothetical indictment is whether Congress intended to reach such conduct by the RICO statute, and that, as Judge Hall demonstrates, is a

2

rather easy question to answer. *See* Hall Concurrence at 1-2. Nothing in the definition of "enterprise" excludes foreign-based associations, groups, or corporations, and it is difficult to believe that Congress intended to exclude them. If members of a Mexican drug cartel, the Sicilian Mafia, or a foreign-based terrorist organization commit a series of violent crimes on U.S. soil that would clearly violate RICO if committed by a local drug distribution gang, a New York-based Mafia family, or the Weather Underground, after all, it would be quite odd to consider the prosecution of such acts in the United States an "extraterritorial" application of RICO, and there is certainly no reason to believe that Congress did not intend to apply RICO to such actions simply because the (entirely American) pattern of racketeering was carried out to further the goals of a foreign enterprise.

Does the outcome change if one predicate crime that formed part of the charged pattern of racketeering activity took place abroad, in violation of a statute that Congress (a) expressly gave extraterritorial reach and (b) expressly made a RICO predicate? I can't see how it does. How can Congress's enactment of a law specifically designed to protect Americans abroad, and its express incorporation of that law into RICO as a predicate crime, constitute anything other than a clear expression of congressional intent to apply RICO to persons who commit that crime, in furtherance of the affairs of an enterprise, as part of a pattern of racketeering? The plain meaning of RICO demands that result. By including certain crimes with extraterritorial application as RICO predicates – including some that can *only* be committed abroad – Congress unequivocally expressed its intention that RICO apply to patterns of racketeering activity that include such crimes. You may call this an "extraterritorial" application of RICO if you like, but, whether or not the label is properly applied, there is no doubt that Congress intended to apply

3

RICO in that situation. Nor should that conclusion change if *all* the predicate crimes alleged were committed abroad – if, for example, the revolutionary group planted no bombs on U.S. soil but carried out multiple beheadings of Americans in violation of 18 U.S.C. § 2332(a)(1). So long as Congress expressly extended its criminal prohibitions to the foreign conduct in question and incorporated those prohibitions into RICO, Congress has determined that such predicate crimes can constitute a pattern within the definition of RICO. Presumably it has done so because a pattern of such crimes strikes at American interests just as much as a pattern of terrorist acts committed in the United States by the same foreign-based enterprise.

Of course, none of this suggests an intention to apply RICO, generally, to conduct committed abroad. If members of a foreign enterprise engage in a pattern of entirely *foreign* murders and drug distribution, nothing in RICO could make that activity a crime under U.S. law. Indeed, although applying RICO to such conduct would plainly be an "extraterritorial" application of the statute, we need not even invoke the presumption against extraterritoriality to know that the application is impermissible, because the definitional provisions of RICO make clear that Congress did not define such conduct as a RICO violation. A pattern of murders of Italian citizens committed by members of an Italian organized crime group in Italy cannot violate RICO, because murder is a RICO predicate only when it is "chargeable under state law" or indictable under specific federal statutes. *See* 18 U.S.C. §§ 1961(1)(A), 1961(1)(G). Entirely foreign activity does not qualify, and nothing in RICO indicates any contrary intent to extend its reach to foreign criminality of a similar nature to the domestic conduct covered by RICO. To the extent that *Norex* holds that RICO does not, of its own force and in general, have "extraterritorial" application in such circumstances, it is of course correct.

4

In that sense, indeed, RICO does not even implicate the extraterritorial ambiguities raised by most statutes. Most congressional statutes prohibit conduct in general terms that, on their face, could be taken to apply to anyone in the world. In *Morrison*, for example, the Supreme Court interpreted a provision of the Securities Exchange Act that makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device." *See* 15 U.S.C. § 78j(b). But we know that Congress generally does *not* intend, by using such broad language as "any person" or "any national securities exchange," to apply those generalized prohibitions to actions that take place outside our borders, because Congress ordinarily legislates to regulate conduct within its primary jurisdiction; that is what the presumption against extraterritorial application means. *Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 178 (2d Cir. 2014). That presumption applies to RICO as it does to other statutes, but RICO is quite explicit that its prohibitions apply only to patterns of racketeering acts that themselves violate state or federal law. It does not, for example, say that "no person shall conduct the affairs of an enterprise through a pattern of committing murder," but confines itself to patterns of murder that are chargeable under the law of a state, or that are indictable under specific federal law. Unlike § 10(b), RICO is thus not even susceptible to a literalist reading that its general terms *might* apply to foreigners.

At the same time, however, Congress was exquisitely clear that *some* acts that are committed abroad *are* predicate acts under RICO, and thus can form a pattern of racketeering activity. To the extent that a pattern consisting of such acts is charged as a violation of RICO, I

5

see nothing in the presumption against extraterritoriality that exempts that pattern from prosecution. It therefore seems to me that there is nothing novel or odd about the idea that RICO does not, in general, "apply extraterritorially," but that it may apply to acts committed abroad where those acts violate statutes that were themselves expressly stated by Congress to have extraterritorial application and that Congress has classified as RICO predicates.

In the present posture of the case, I need not address all of the issues that may arise in working out these basic principles. Nor need I decide how the instant case should be resolved, or whether *Norex* was correctly decided. I join the dissenters in believing that we would do well to convene *en banc* to resolve those very questions, and I agree with them that the reasoning and result in this case are deeply in tension with the reasoning and result in *Norex*, whether or not those two holdings are ultimately irreconcilable. To the extent, however, that the other dissenters see the panel's approach to RICO and extraterritoriality as deeply disturbing, unprecedented, and inconsistent with *Morrison*, I respectfully disagree. To the contrary, I believe that any interpretation that suggests that operatives of a foreign enterprise cannot be held accountable under RICO for a pattern of predicate crimes that violate federal statutes with express extraterritorial reach would astonish the Congress that made such violations RICO predicates in the first place. Should the Supreme Court take up my dissenting colleagues' invitation to grant further review of this case, I hope and trust that it will not allow the context of this case – a civil action that, like many civil RICO suits, might lead some to doubt the wisdom of allowing a somewhat amorphous statute to be wielded by private interests in endlessly creative ways – to blind it to the clear intention of Congress to apply RICO to foreign terrorist groups who commit patterns of criminal acts that may occur abroad, but that violate American laws with express extraterritorial reach.

6